**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| **ELISANDRO MENDOZA,** Plaintiff, | ) | 3:09-cv-00717-LRH-VPC |
| v. | ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| **STEFANIE HUMPHREY, *et al.*,** Defendants. | ) | January 25, 2011 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#26).[1] Plaintiff opposed (#35), and defendants replied (#36). The court has thoroughly reviewed the record and recommends that defendants' motion to dismiss (#26) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Elisandro Mendoza ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#11). Plaintiff brought his original action pursuant to 42 U.S.C. § 1983, alleging that defendants retaliated against him for filing grievances and failed to protect him from a violent attack while he was incarcerated at Warm Springs Correctional Center ("WSCC") in violation of the First, Eighth, and Fourteenth Amendments.[2] *Id.* Specifically, plaintiff claims that while working in the kitchen at the WSCC, he noticed that the food being served to inmates was often old and expired. *Id.* at 3. Plaintiff believed this to be wrong and took the expiration tags off the food containers and sent them to the Mexican consulate's offices and his habeas corpus attorney. *Id.* On or about

---

[1] Refers to the court's docket numbers.

[2] Plaintiff's Fourteenth Amendment claims were dismissed with prejudice upon screening of his complaint pursuant to 28 U.S.C. § 1915A (#11).

January 16, 2009, plaintiff states that he was fired by John Doe #2, who said she was going to talk to defendant Humphrey to have him "silenced on the matter." *Id.* at 4. Plaintiff claims that on or about August 11, 2009, "[he] was walking to canteen and saw Warden Humphreys [sic] talking to three inmates . . . [he] saw her pumping her fist and heard her tell these inmates [his] first and last name." *Id.* Later that week, on or about August 17, 2009, plaintiff was walking by unit two when he was grabbed by several inmates and beaten. *Id.* The inmates yelled, "this is from the warden," and they told plaintiff that defendant Humphrey requested that they beat him. *Id.* Plaintiff asserts that John Does 1, 3, and 4 turned a "blind eye" to the situation by allowing the inmates to beat him without intervening. *Id.* at 6. Plaintiff claims that he has ongoing physical and mental pain from the incident. *Id.* Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. *Id.* at 11.

Defendants filed a motion to dismiss plaintiff's complaint for failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative Regulation ("AR") 740 (#26). Defendants claim that plaintiff filed an informal grievance about the assault on August 27, 2009. *Id.* at 3. The grievance form stated that he "was brutally beaten by 5 Mexican inmates" and that he heard one inmate say "we do this because lady warden says so" (#26-3, p. 3). Defendants note that plaintiff's grievance form did not identify his attackers and did not mention that he believed the attack was in retaliation for reporting that WSCC served expired food. *Id.* Pursuant to AR 740, NDOC officials referred the matter to the Inspector General's ("IG") office for review because the grievance alleged misconduct by an employee (#26, p. 3). NDOC responded to plaintiff's grievance stating: "[Y]our informal grievance has been referred to the Inspector General's office for review and as such, all time frames are suspended until disposition is received" (#26-3, p. 3).

Defendants explain that on December 3, 2009, plaintiff filed what he deemed a first level grievance. *Id.* However, the grievance suffered from procedural defects including: (1) the IG's office had not yet completed its investigation so plaintiff's informal level grievance had not yet been decided, and (2) plaintiff failed to attach a copy of the informal level grievance response to his first level grievance. *Id.* at 3-4. NDOC officials returned plaintiff's first level grievance with a note

stating: "Did not attach required Informal level form with response, for review. Please re-submit First Level with documents to process" (#26-3, p. 6). The form also includes the following warning: "Failure to re-submit the grievance through the prescribed timeframe [sic] shall constitute abandonment." *Id.* Defendants provide plaintiff's NOTIS report, which reveals that the IG's office completed its investigation on February 16, 2010. *Id.* at 3.

In plaintiff's opposition he agrees that he filed an informal grievance and a level one grievance regarding his attack (#35, p. 2). Plaintiff explains that during the grievance process he "had the help of another inmate, because the plaintiff does not read or write in his own language, and does not read, write or speak any [E]nglish." *Id.* Plaintiff claims further that he was moved several times during the grievance process due to "ongoing harassment" and for medical care. *Id.* Plaintiff's history of relocation is detailed in the offender information summary filed *in camera* by defendants (#27-1 (*sealed*)). Plaintiff explains that by the time he was able to get help from another inmate to continue the grievance process "it was to [sic] late to re-submit the level-1 grievance and he would then file this Civil Rights Complaint . . . on 04/26/10 to try and resolve the issues that he has at the Warm Springs Correctional Center."[3] *Id.* at 3. In addition to the original informal grievance and allegedly improper first level grievance provided by defendants, plaintiff also includes documentation of a second informal grievance filed on November 12, 2009. *Id.* at 12. Plaintiff attaches NDOC's response dated November 23, 2009, which deems the grievance improper and states: "Already filed issue on grievance #20062880682, which was referred to the IG's office for review. *Id.*

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

---

[3] Upon review of the docket for this matter, the court notes that plaintiff commenced this lawsuit by filing an application for leave proceed *in forma pauperis* along with his initial civil rights complaint on December 8, 2009 (#1), approximately five days after filing his first level grievance. Plaintiff filed his first amended complaint on April 26, 2010 (#11).

## II. DISCUSSION & ANALYSIS

### A. Discussion

Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional requirement, and defendants bear the burden of raising and proving that the plaintiff has not exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert denied*, 540 U.S. 810 (2003). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading. *Jones*, 549 U.S. at 216.

Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. The court may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment; however, "if the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1119-20*, as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also, Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.").

#### 1. **Prison Litigation Reform Act of 1996**

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court

has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle*, 534 U.S. 516, 524-25. *See id.* at 1200.

2. **NDOC Procedures**

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

The NDOC grievance procedure is governed by AR 740 (#26-2). Defendants attach to their motion the relevant version of AR 740, which was in effect at the time plaintiff filed his grievance. *Id.* In order for plaintiff to exhaust available remedies at the time of his injury, AR 740 required the following: (1) an informal review level, which "shall be reviewed and responded to by the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "shall be reviewed and responded to by the Warden;" and (3) a second level grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." *Id.* at 11.

Once received, NDOC logs informal grievances into a tracking system. *Id.* at 15. The caseworker assigned to the informal level grievance will provide the inmate with a response within twenty-five days, unless more time is required to conduct further investigation. *Id.* For cases in which an inmate alleges staff misconduct, the case is forwarded to the Office of the Inspector General for review and the informal grievance response reflects this action. *Id.* at 16. In this case, "[t]imeframes [sic] are suspended until a disposition is received from the Inspector General's Office." *Id.* If the inmate is not satisfied by NDOC's response to his informal grievance, he may appeal the decision within five days by filing a first level grievance. *Id.* at 16-17. NDOC will provide a response within twenty days of receipt of the first level grievance. *Id.* at 17. Finally, if the

inmate is not satisfied with the first level grievance outcome, he may file a second level grievance, to which the NDOC will respond within twenty days. *Id.* at 17-19. Upon completion of the grievance process, inmates may pursue civil rights litigation in federal court.

**B. Analysis**

Defendants argue that plaintiff failed to exhaust his administrative remedies with respect to all claims (#26). Specifically, defendants assert that plaintiff properly filed an informal level grievance, which was forwarded to the IG's office for investigation, but that he subsequently filed an improper first level grievance that did not include the disposition of the informal level grievance because it had not yet been rendered by the IG's office. *Id.* at 3-4. Defendants note that plaintiff did not refile a first level grievance thereby abandoning his claim. *Id.* at 4. Plaintiff argues that he "tr[ied] to follow all the rules applying to the grievance process," but that due to several transfers and unit moves, he ran out of time to resubmit his first level grievance (#35, p. 2-3).

Based on the facts before the court, defendants met their burden of proving that plaintiff has not exhausted his remedies. Defendants and plaintiff provide copies of two informal level grievances and one first level grievance. The parties seem to agree that NDOC officials forwarded the initial informal level grievance to the IG's office for investigation and that the subsequent informal and first level grievances were improper. The IG's investigation was ongoing at the time plaintiff filed these follow-up grievances, which rendered plaintiff's second informal grievance duplicative and his first level grievance premature. Plaintiff's sole argument as to why this court should consider him to have fully exhausted his grievances is that he moved several times during the pendency of his initial informal grievance. Because plaintiff is not a native English speaker, he requires the assistance of other inmates in order to prepare his grievance forms, and presumably his court filings. Plaintiff seems to argue that due to several moves, he was unable to timely secure assistance to prepare and refile a first level grievance. The court rejects plaintiff's argument for three reasons.

First, NDOC notified plaintiff that while the IG's office investigated his claim all time frames associated with grievance filings were suspended. Therefore, prior to February 16, 2010, when the IG's office concluded its investigation, plaintiff did not have any time constraints. Second, plaintiff

filed his nonconforming first level grievance on December 3, 2009. NDOC responded to this grievance on December 16, 2009. Only five days after filing the first level grievance, plaintiff filed the initial complaint in this matter. Therefore, it is clear from this sequence of events that plaintiff not only declined to wait for the IG's office to conclude its investigation prior to proceeding with litigation; he also did not wait for the NDOC to respond to his first level grievance. Third, plaintiff's preparation of the complaint filed on December 8, 2009, is evidence that he was able to secure the assistance he needed in drafting court documents. The court concludes that if plaintiff could locate assistance for the purpose of filing a lawsuit, it is likely plaintiff could have used another or the same inmate to assist him with filing a conforming grievance upon conclusion of the IG's investigation.

Based on these facts and the sequence of events in this case, it is clear that plaintiff did not abide by the requirements provided in the PLRA or AR 740, which govern exhaustion of administrative remedies prior to filing a civil complaint. Therefore, defendants' motion to dismiss plaintiff's claims for failure to exhaust is granted.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants met their burden of proving that plaintiff failed to exhaust his administrative remedies. Therefore, the court recommends that defendants' motion to dismiss(#26) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#26) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's first amended complaint (#11) be dismissed without prejudice.

**DATED**: January 25, 2011.

Valerie P. Cooke

**UNITED STATES MAGISTRATE JUDGE**